RUCKMAN vs. BRYAN.

Money knowingly lent to be staked on the event of a horse race, cannot be recovered back.

MOTION to set aside the report of a sole referee. The action was assumpsit on the money counts. The principal demand, and the only one which the referee found to be supported by the evidence, was for the sum of six hundred dollars advanced by

Ruckman *v.* Bryan.

the plaintiff at the defendant's request, which the plaintiff paid to a stakeholder as a bet upon the result of a horse race. The evidence supported the conclusion that the plaintiff made a bet of $3000 on a trotting match to be run between the horses Lady Suffolk and Americus, on the Centreville course in Queens county, in which bet the defendant was interested as a party to the amount of $600, and that the plaintiff as the defendant requested, advanced that sum for him and paid it to the stakeholder. The bet was lost and the money paid over to the winning party, and the defendant afterwards promised to pay it to the plaintiff. The referee held that money loaned to be bet or staked could not be recovered, and reported in favor of the defendant, which report the plaintiff moved to set aside.

*S. Stevens,* for the plaintiff.

*A. C. Bradley,* for the defendant.

*By the Court,* BEARDSLEY, J. The defendant, as the evidence shows, was interested to the extent of six hundred dollars in the bet of three thousand made by the plaintiff, it having been previously agreed between them that the plaintiff should make the advance of the six hundred dollars for the purpose of this bet. Upon this arrangement the advance was made, the money being placed by the plaintiff in the hands of the stakeholder; and the question presented is, can the plaintiff recover for money so lent and advanced by him?

Perhaps the circumstance that the money was delivered by the lender to the stakeholder, and not to the borrower, might distinguish this case, in principle, from a direct loan and advance of money to the borrower personally, to enable him to make the bet. But if such a distinction could be made, I do not regard it as material to proceed upon it. I regard the case in hand, in effect, as a direct loan and advance to the defendant for the express purpose of making the bet; and if money so loaned is recoverable, this report should be set aside, and one

should be made in favor of the plaintiff, to the amount of six hundred dollars and interest.

The bet was clearly illegal. "All wagers, bets or stakes, made to depend upon any race, or upon any gaming by lot or chance, or upon any lot, chance, casualty, or unknown or contingent event whatever, shall be unlawful. All contracts for or on account of any money, or property, or thing in action so wagered, bet or staked, shall be void." (1 R. S. 662, § 8.) It makes no difference that the race was to go off on an authorized course, as that in Queens county was; the bet was, notwithstanding, illegal. (*Gibbons* v. *Gouverneur*, 1 *Denio*, 170.)

The English statute of 9 Anne, c. 14, § 1, which has been substantially re-enacted here, (1 R. S. 663, § 16,) declares that all securities for the repayment of money knowingly lent for gaming or betting on games, shall be void. (*Chit. on Cont.* 712.) It has been held that as this statute only avoids the *security* given for money so lent, the borrower is still liable on the *contract* to loan and borrow, and which may, therefore, be enforced by the lender in an action of assumpsit for money lent and advanced, (*Barjeau* v. *Walmsley*, 2 *Stra.* 1249; *Robinson* v. *Bland*, 2 *Burr.* 1077; *Alcinbrook* v. *Hall*, 2 *Wils.* 309; *Wettenhall* v. *Wood*, 1 *Esp*, 18.) In a late case in this court the present chief justice remarked, that our statute "of betting and gaming" went further than the English, and that since its passage he did "not see how money knowingly lent for the purpose of betting, or gaming" could "be recovered from the borrower." (*Peck* v. *Briggs*, decided May term, 1846.) (*a*)

However this may be upon the words of the statute, it seems now to be entirely settled in the English courts that the cases I have referred to, so far as they sanction the doctrine that money knowingly loaned for an illegal purpose may be recovered by the lender, cannot be sustained. They were expressly repudiated in the case of *McKinnell* v. *Robinson*, which was decided in the court of exchequer in 1838. (3 M. & W. 434.) That was an action of assumpsit brought by the lender against the

---

(*a*) *Ante, p.* 107.

Ruckman v. Bryan.

borrower, to recover for money lent to game with at an illegal game. The court held that the action could not be maintained. Lord Abinger, C. B. in giving the opinion of the court, referred to the case of *Cannan* v. *Bryce*, in the king's bench, (3 *B. & Ald.* 179) as directly in point; and having reviewed the cases from Strange, Wilson, Burrow and Espinasse, which were cited on the argument, and to which I have already referred, closed his opinion in these words—"We therefore think, that notwithstanding these authorities, the money lent cannot be recovered; for it is lent for the express purpose of a violation of the law, and enabling the borrower to do a prohibited act; and the principle is now distinctly laid down in the case above cited, and may be considered as finally settled, that money so lent cannot be recovered." Other cases are equally direct and explicit on the point, and it may be regarded as entirely at rest in the English courts. (*Langton* v. *Hughes*, 1 *M. & S.* 593; *The Gas Light & Coke Company* v. *Turner*, 5 *Bing. N. C.* 666; *De Begnis* v. *Armistead*, 10 *Bing. R.* 107; *Chit. on Cont.* 696, 714.)

It was unlawful in this case to make the bet, and not less so to furnish the money for that purpose. No cause of action can arise in favor of a party to an illegal transaction, nor will the law lend its aid to enforce a contract which is in conflict with the terms or the policy of a statute. The referee decided correctly on this point, and the motion to set aside the report must be denied.

Motion denied.