## SAMUEL EVANS v. THE INHABITANTS OF THE CITY OF TRENTON.

1. An officer of a municipal corporation who receives a fixed salary must perform all the duties of his office for that salary, however inadequate, and cannot recover extra compensation even if promised it by a committee or individual members of the corporation. But for services performed by request, not part of the duties of his office, and which could have been as appropriately performed by any other person, he may recover a proper remuneration.

2. In a suit against the defendant in his individual capacity, and not as city treasurer, for moneys in his hands, he may offset a demand due to him from the city.

3. The mere agent of a party to an illegal transaction cannot set up the illegality of the transaction in a suit by his principal, to recover money that has been paid to such agent for his principal, on account of the illegal transaction. This defence can only be set up by a *party* to the illegal transaction.

4. A city treasurer is not entitled to retain all city funds that come to his hands because they were raised in a manner or for a purpose contrary to law.

The proceedings removed by the writ of error in this case, was the record of a judgment in the Supreme Court, obtained by the defendants in error against the plaintiff, their former city treasurer. The cause was tried before the late Justice RANDOLPH, at the Mercer Circuit, in March

term, 1851. The errors assigned were founded upon a bill of exceptions to the rulings of the circuit judge at the trial.

The reasons upon which the judgment of this court was founded, and the facts relating to them, are stated in the opinion of the court, delivered by

POTTS, J. Samuel Evans was treasurer of the city of Trenton, from the year 1837 to 1841. He held the office by appointment of the common council, and his salary was fixed by ordinance at ten dollars per annum.

In 1837, the city council passed an ordinance authorizing the borrowing of twenty thousand dollars upon certificates to be issued by the city, bearing an interest of one per cent. ; and made it the duty of the treasurer to sign these certificates, as treasurer, to redeem them when presented, and to loan out the money thus borrowed, on bond and mortgage. The execution of this ordinance was committed to the finance committee of the council and the treasurer, and in pursuance of the power thus vested in them they issued certificates of loan, in sums ranging from five cents to two dollars, to the amount of the sum thus authorized to be borrowed, and the present controversy grows out of this transaction.

In the final settlement of his accounts, Mr. Evans retained in his hands five hundred dollars of the funds of the city, which he refused to pay over to his successor in office. Whereupon the city brought suit against him for the recovery of this balance.

I. On the trial of the cause at the circuit, after the plaintiffs had rested, the defendant called a witness to prove that " he had performed for the plaintiffs certain services for which he claimed compensation ; that these services were not performed by him as treasurer of the city, but as treasurer of the finance committee ; that said services consisted in preparing for circulation certain tickets of the denominations of five, ten, twelve and a half, fifteen, and twenty-five cents, and one and two dollars, to the amount in the aggregate of twenty thousand dollars ; that at great labor he

*separated* and *trimmed* these tickets, *numbered* them and *issued them* from time to time, and loaned out the money thus obtained to various persons; and then for more than two years, at the instance of the plaintiffs, kept the tickets in circulation, redeeming them when called upon, and then *re-issuing* them, and changing them at all times during said period, and finally paid them off. That during all this time the common council recognized the defendant in the discharge of the duties as treasurer of the finance committee, and not as treasurer of the city; that during all this period, his accounts as treasurer of the city were annually settled, but comprised no part of said business; that in the performance of this business he was recognized and employed by the finance committee as their treasurer, and was so recognized on the minutes of the common council; that his accounts as treasurer of the finance committee were always kept distinct, in the banks and elsewhere, from his accounts as treasurer of the city; and that there was an *express understanding* between the defendant and the finance committee, who had the entire charge of this business, that he was to have compensation for his said services; that this business was left in his hands unsettled for nearly two years after he had ceased to be treasurer of the city, and his accounts as such treasurer of the city, had been fully settled."

The plaintiffs objected to this evidence, and insisted that even if the facts were proved as offered, they constituted no legal defence to the action. The judge who tried the cause sustained the objection, and the defendant excepted.

This ruling is the first ground assigned for error which I consider it necessary to notice.

It is a well settled rule, that a person accepting a public office with a fixed salary, is bound to perform the duties of the office for the salary. He cannot legally claim additional compensation for the discharge of these duties, even though the salary may be a very inadequate remuneration for the services. Nor does it alter the case that by subsequent statutes or ordinances his duties are increased and not his

salary. His undertaking is to perform the duties of his office whatever they may be from time to time during his continuance in office for the compensation stipulated,—whether these duties are diminished or increased. Whenever he considers the compensation inadequate, he is at liberty to resign. *Andrews* v. *United States,* 2 *Story's C. C. R.* 202; *People* v. *Supervisors,* 1 *Hill,* 362; *Bussier* v. *Pray,* 7 *Sergt. & Rawle,* 447; *Angell & Ames on Corporations,* § 317.

This rule is of importance to the public. The successful effort to obtain office is not unfrequently speedily followed by efforts to increase its emoluments; while the incessant changes which the progressive spirit of the times is introducing, effects, almost every year, changes in the character, and additions to the amount, of duty in almost every official station; and to allow these changes and additions to lay the foundation of claims for extra services would soon introduce intolerable mischief. The rule, too, should be very rigidly enforced. The statutes of the legislature and the ordinances of our municipal corporations seldom prescribe with much detail and particularity the duties annexed to public offices; and it requires but little ingenuity to run nice distinctions between what duties may and what may not be considered strictly official; and if these distinctions are much favored by courts of justice, it may lead to great abuse.

General rules find often their best illustration in particular examples. Now in this case, by the ordinance of 1837, authorizing the twenty thousand dollar loan, it was made the duty of the treasurer of the city to sign, issue, and redeem the certificates, and disburse the money raised. His offer was to show that he prepared these tickets for circulation; separated, trimmed, and numbered them; issued them; loaned out the money thus obtained; redeemed the tickets when called upon; re-issued them; kept them in circulation for more than two years; and finally paid them off. These, he alleges, were extra services, for which he was entitled to the five hundred dollars which he claimed. But clearly *a*

*large part of these* services were within the scope of his official duty. The issuing, re-issuing and redeeming these certificates, and the loaning of the money, were acts performed as treasurer of the city—acts that nobody but the treasurer was authorized to perform; and however totally inadequate the compensation he received by way of salary may have been, and undoubtedly was, *we* have nothing to do with it—the jury had nothing to do with it—and so far as it related to these services, this evidence was rightly ruled out.

Nor was it competent for the defendant to set up any understanding had with the finance committee of the common council, that he was to have extra compensation for these services. The ordinance that fixed his salary fixed his compensation, and it could not be changed by any understanding had with individual members of the council, whether acting as a committee or not, unless he first showed that those with whom he had such understanding had been empowered by some ordinance to enter into an agreement of the kind. Equally untenable was the proposition, that in rendering these services he acted as the treasurer of the finance committee, and not as treasurer of the city, and was so recognized as acting and accounting by the committee and the council. There was no such office known to the law. He had no authority to perform these duties in any such assumed capacity, and any apparent recognition of him in such capacity must he considered as an inadvertency on the part of the committee and the council.

But the rule, nevertheless has its limit. It does not follow from the principle laid down, that a public officer is bound to perform *all manner of public service* without compensation, because his office has a salary annexed to it. Nor is he in consequence of holding an office rendered legally incompetent to the discharge of duties which are clearly extra official, outside of the scope of his official duty. And I think we have in a part of the offer made by the defendant, a clear illustration of this principle. To carry this ordinance into effect, a large number of these certificates or

tickets were to be prepared for the action of the treasurer. Paper was to be purchased, the certificates were to be printed, separated, trimmed, and numbered. The ordinance required the treasurer to sign, issue and redeem the certificates, and this pre-supposed that the council was to procure the certificates and have them prepared for the treasurer's action. These were in no sense official duties—they were not within the scope of his general duties as treasurer, nor within the duties prescribed by the special ordinance. They might as well be performed by one person as another—by a private citizen as by a public officer—and if he could show that he had incurred this expense or performed this duty by request of the proper authority of the city, he should have been permitted to do so. The claim he thus established would have been a claim, not for extra services as treasurer of the city or services as treasurer of a finance committee, but simply for services rendered in his private, individual capacity.

But it is said this suit is brought by the plaintiff against the defendant for money received by him *as city treasurer*, and that he cannot set off against it a debt due him from the city in his *individual* right; that it was his duty to pay the money over to his successor in office, and if he had a just claim against the city he was at liberty to sue for it. The answer to this is that the suit is brought against him in his individual capacity and not as late treasurer, is in *assumpsit*, in the usual form, for money had and received by him for the use of the city generally, and not in any official capacity, and, therefore, the objection does not apply.

The judgment must be reversed. But it may save trouble hereafter in this case, to express an opinion upon another part of the defence offered to be set up.

II. In the second place, the defendant at the trial below offered to show "that although the said ordinance of 1837 on its face purports to be for the purpose of raising money for the building of the city hall and for other purposes, that in point of fact and according to the real design of the ordinance, the *said money* was illegally raised and appro-

priated under said ordinance in exchange for *tickets issued by him at the instance of the plaintiffs, for banking purposes,* and that it was put into the hands of the defendant to be used ·for this purpose, and was so used, and that the defendant *retained the sum sued for* on account of services rendered in said .banking business." This was also objected to by the plaintiffs, 'and ruled out by the judge, and this ruling is assigned for error.

The statute of the 15th February, 1815, prohibited banking without the authority of the legislature, *Rev. L.* 573; and that of 16th February, 1831, declared, that it should not be lawful for any person or body corporate to issue, or pay away, pass, exchange. or transfer, or cause to be issued, paid away, passed, exchanged, or transferred, any ticket of any denomination whatever, intended to circulate for the payment of debts, dues or demands, in lieu of or as a substitute for bank notes or bills, or other lawful currency of the state, without first having obtained a law for that pur-· pose. *Har. Com.* 361. And these laws being in force at the time of the passage of the ordinance of 1837 by the common council, and during the two succeeding years through which the transactions growing out of that ordinance took place, to wit: the issuing, re-issuing and re-deeming of the certificates of loan authorized by it, the object of the defendant was to show the nature of those transactions, and to insist that though the ordinance on its face might not have been violative of these laws, yet these transactions under it were so. And he now insists that if he had been permitted to show this upon the trial it would have been a good defence against the suit brought against him by the city.

It is unnecessary to cite authorities, for the books are full of cases going to show that contracts are illegal when founded on a consideration contrary to good morals, or when they are against the principles of sound policy, or founded in fraud, or are in contravention of the positive provisions of some statute law ; and that courts will not lend their aid to enforce such contracts, on

the ground of public policy. And in this respect the distinctions formerly made between *malum in se* and *malum prohibitum* have been very generally abandoned. Every act is now regarded as unlawful which the law forbids to be done; and every contract is declared void, which contravenes any legal principle or enactment. *Co. Lit.* 206, *b.*; 2 *Stark. Ev.* 87, *note K*; 2 *Bos. & Puller* 374; 3 *Barn. & Ald.* 183; 7 *Greenl. R.* 462.

But the most salutary rules are always liable to abuse in their application to cases not within the range of the principles they are intended to establish, or the mischief it is their purpose to prevent. And the rule that courts will not enforce illegal contracts does not apply to the case of third parties who have *no interest in, or connection with* the illegal contract itself. If, for instance, the money be not paid over, but remains in its transit, in the hands of an intermediate stakeholder, the law will not permit such third person, who is only thus incidentally connected with the transaction, to set up the illegality of the contract, between the principal parties. A mere agent cannot shelter himself from paying over the money by such a plea, and the money advanced may be reclaimed. 2 *Kent's Com.* 467; *Colton* v. *Thurland*, 5 *Term R.* 405; *Smith* v. *Bickmore*, 4 *Taunton* 474.

In *Hartleton* v. *Jackson*, 8 *Barn. and Cress.* 221, Bayley, J. after reviewing the cases, said, "It is now a settled rule, that where a wager has been laid on the event of a boxing match, either party may recover his own stake from the holder;" and that "if a stakeholder pays over money without authority from the party, and in opposition to his desire, he does so at his own peril." If he pays over the money *with the assent* of the parties, the case is different; and inattention to this distinction formerly created some confusion in the cases. *Howson* v. *Hancock*, 8 *Term R.* 575, was a case of this kind. The case of *Tenant* v. *Elliot*, 1 *Bos and Pul.* 3, and *Farmer* v. *Russell*, 1 *Bos. & Pul.* 296, settle that where the loser of an illegal wager has paid the money into the hands of an *agent* for the winter, the *agent* cannot set up the illegality against the claim of his principal.

In New York there is some conflict of authority. In *Vischer* v. *Yates*, 11 *Johns. R.* 21, it was held that money delivered to an agent to bet with, on an approaching Governor's election, that is, for a clearly illegal purpose, might be recovered back from the agent by the person making the deposit, before it was paid over, though the money had actually been bet, and the bet was lost. Here it was earnestly contended, that the claim of the plaintiff was repelled by the maxim, *in pari delicto potior est conditio possidentis.* But Chief Justice KENT, delivering the opinion of the whole court, said, "this objection is applied exclusively to the suit against the principal or winner; and there is no instance in which it has been used as a protection to the intermediate stakeholder, who, though an agent in the transaction, *is no party in interest to the illegal contract,* as between the plaintiff and him the maxim has no application. He is not *in pari delicto,* and the parties must be *equally* criminal, before the maxim can be applied. The stakeholder cannot in good conscience appropriate the money to his own use." In a divided court of errors, a judgment depending on the same facts was reversed at the term succeeding that in which the above case was decided; *Yates* v. *Foote,* 12 *Johns. R.* 1; but it was well remarked by SPENCER, J., in *Denniston* v. *Cook,* 12 *Johns. R.* 377, that from the manner of deciding cases in the court of errors it was impossible to ascertain the precise principle upon which *Yates* v. *Foote* was decided; there was but one opinion delivered, and whether that was adopted by the majority of the court or not is uncertain. In *Ruckman* v. *Bryan,* 3 *Denio,* 340, BEARDSLEY, J., held that money *knowingly* lent to be staked on the event of a horse-race could not be recovered back. In *McAllister* v. *Hoffman,* 16 *Sergt. & Rawle,* 147, after a full review of the cases upon the argument, the Supreme Court unanimously sustained the principles adopted by Chief Justice KENT in *Vischer* v. *Yates.* Where the agent or stakeholder is clearly and beyond all question not in *pari delicto,* I apprehend no well considered case has ever held that the money could not be recovered out of his hands.

Now admitting that the ordinance of 1837 was designed to violate the law, and that this design was carried out, can it be that the treasurer of the city, into whose hands this money, the proceeds of this illegal traffic in tickets came as treasurer, could put it in his pocket and say when asked for it by the city—you had no right to issue these tickets, this money is a part of the proceeds of that business, and I will not account for it. I cannot think so. If he has a right to refuse on this ground to pay over the five hundred dollars that he has retained, he had the same right as soon as the twenty thousand dollars was received in exchange for these tickets, to put the whole sum in his pocket, and under the same plea to refuse to account for a dollar of it. The illegal transaction was between the city and the holders of these tickets. The treasurer was the mere official instrument used by the parties. It has been held that if a bank discounts a note upon usurious interest, the party who pays the discount may set the usury up as a defence against an action brought by the bank—but it has never been held that if the maker pays the note to the cashier when due, *he* may put the proceeds of it in his pocket, and set up the usury against the bank. And so, of any agent or attorney, collecting money upon a note or bond infected with usury, where the payor or obligor makes no defence, has it ever been held that such agent or attorney may avail himself of the illegality of the original transaction in a suit against *him* for the money he has received! The law in all these cases, raises an implied contract between the party receiving the money, and him to whose use it is received, that he shall account for it; and in *that contract* there is no illegality. The case of a public agent seems to me to be stronger, too, than that of a private agent, acting for his principal. He has upon him the obligation of official duty; an official bond, and generally an official oath, binding him faithfully to keep and account for the public money entrusted to him by virtue of his office.

Suppose the doctrine contended for by the defendant to be law, a treasurer of a city corporation, authorized under

such an ordinance as this to borrow money on certificates of loan, might issue them of an illegal denomination, for the very purpose of getting the proceeds in his pocket, and keeping them as the ingenious fruit of his own fraud.

Upon the whole, I am entirely clear that the evidence offered under this second head was incompetent, and was properly overruled ; and that it would have been so, even if the defendant in his offer had gone so far as to propose to show that the five hundred dollars he retained was a part of the proceeds of this very ticket transaction ; which, in closely examining his offer, I do not see that he did.

As to the other errors assigned, they were not pressed on the argument, and I do not think it necessary to notice them further than to say, that they do not appear to be sustained.

Let the judgment be reversed upon the first point taken.

*For Reversal*—THE CHANCELLOR, Judges POTTS, ARROWSMITH, ELMER, OGDEN, RISLEY, CORNELISON, HUYLER, VALENTINE and WILLS.

*For Affirmance*—None.

Judgment below reversed.

CITED *in Huncke v. Francis, 3 Dutch.* 68