Hyatt, J.
—The cause of action averred in the complaint fe upon an account stated between the plaintiffs and the defendant, upon which the sum of $1,172 75 was found to be due from the defendant to the plaintiffs; that the defendant then promised to pay that sum, but has failed to do so.
The defendant denies that an account was stated. He admits that he promised to pay the said sum, and that no part thereof has been paid, but avers that there was never any consideration whatever for his said promise, except an indebtedness from him to the plaintiffs for moneys purporting to be represented by “chips” wagered, staked and lost by him, and won and taken by plaintiffs, while engaged with the plaintiffs in a certain game of chance commonly known as “poker;” that the said pretended consideration is unlawful, and his said promise null and void.
It appears from the evidence that at the times mentioned in the alleged account stated, and at other times, the defendant frequented certain premises which he calls “ a poker-house” and the plaintiffs style “the Attic club.”
It appears from the evidence that the plaintiffs were the proprietors of the premises; that the frequenters thereof engaged in the game of “poker,” and that at times the plaintiffs joined them; that the plaintiffs, or their servants, furnished the players with “chips,” purporting to represent each a certain sum of money fixed by the players; that at the close of each night’s business, Eansom made up his hooks, in the manner testified to by him as follows:
*684 “ If I didn’t receive a certain amount of chips and had’nt them returned, they would give me money for the difference between what they received and what they returned; if they had more checks than they received from me, they received that difference in money; if they had lost, they would pay me the difference between what they received and what they returned. Q. Did Mr. Vermilyea pay any cash ? A. I don’t think he did. Q. You took, at the close of the day’s business, these checks and charged them against Mr. Vermilyea? A. Whatever he had given a memorandum for, and hadn’t returned, were charged to him. Q. And this would be put upon your books daily ? A. Yes, sir; whatever he lost, which would be the difference between what he received and what he returned.”
The defendant lost in this game “ chips ” representing as aforesaid a considerable sum of money, and he gave “receipts” for these “ chips.” He testified that the plaintiff, Ransom, on the 12th of December, 1883, said: “Let us fix this matter up, stating that I owed them so much, and at that I drew up this paper at his suggestion; when he said let us fix this matter up, he referred to these receipts, I suppose, I lost in the game.”
The defendant signed this paper.
The paper is in the form of a note, payable to Ransom for the amount claimed.
In my opinion, the proof establishes that there was an account stated between the defendant and the plaintiffs, and that the paper or note evidencing a promise to pay to Frank Ransom the exact sum stated to be due from the defendant to the plaintiffs is not of itself sufficient to defeat this action, upon the ground “that there is outstanding a note for the same alleged indebtedness, and that no recovery can be had until it is canceled or surrendered to the defendant.” Wait’s Actions and Defenses, vol. 4, p. 472.
I am satified, however, from all the evidence that the alleged debt was a gambling debt, and that the promise to pay the same is wholly unlawful, null and void.
Whether the dealings between the parties to this suit were in a club or a poker house, does not determine or affect their character; they were indisputably gambling transactions and nothing else.
The game was one of chance, or at least the element of chance largely predominated as affecting its results; it was played for stakes evidenced by “chips,” representing money; they were practically and for the purposes of the game, promises to pay, and they were redeemable by the plaintiffs at their conventional value.
Concerning such transactions, section 8 of the statute against betting and gaming (1 R. S., chap. 20, tit. 8, art. 3) *685 provides: “All wagers, bets or stakes made to depend on any race or upon any gaming by lot or chance, or upon any lot, chance, casualty or unknown or contingent event whatever, shall be unlawful. All contracts for, or on account of any money or property, or thing in action, so wagered, bet or staked, shall be void.”
This alleged contract was “for or on account of these chips.” If they were not money, they were at least the representatives of money for the purposes of these games; and they were certainly property.
As to the circumstances under which, and the purpose for which these chips were loaned by Ransom to the defendant, section 16 of the said statute aptly applies and provides that “all things in action, judgments, mortgages, conveyances, and every other security whatsoever, given or executed by any person where the whole or any part of the consideration of the same shall be for any money or other valuable thing won by playing at any game whatsoever, or won by betting on the hands or sides of such as do play at any game, or where the same shall bo made for the repaying any money knowingly lent or @d for the purpose of such gaming or betting aforesaid, or lent or advanced at the time or place of such play to any person so gaming or betting aforesaid, or to any person who, during such play, shall play or bet, shall be utterly void, except” (the exception relates to securities affecting real estate).
Apart from the words of the statute, money knowingly loaned for an illegal purpose cannot be recovered back. Buckman v. Bryan, 3 Denio, 340; Peck v. Briggs, 3 id., 107.
Upon all the facts as proved, this case is not within the decision of McGuire v. Meares (N. Y. Daily Register, October 29, 1886).
The plaintiff fails to fit his facts to the law there enunciated.
In McGuire v. Meares the plaintiff was the proprietor of an established and well known hotel in this city. In one of its rooms certain men were accustomed to assemble for the purpose of playing poker. Mr. McGuire played there and lost. He gave to Meares bank-checks for the amount of his losses, and requested him to pay over the amounts to the winners, which he did. McGuire subsequently sued him for the amount of these checks, charging him as a stakeholder; it being admitted by all parties that he had, at McGuire’s request, paid over to certain persons, who were identified, the amounts deposited with him by McGuire for that very purpose.
The court held that under the statute against betting and gaming (section 9), he was not liable, in these words: “In *686 this case no money, property or thing in action was paid or delivered to or deposited with the defendant, upon the event of any wager or bet, but the checks (bank checks) in question, as we have seen, were handed to the defendant after the loss and ascertainment of the winner for the purpose of payment over.”
In the present case there is not the slightest pretense of a claim that Eansom occupied the position of a stakeholder.
Meares had no interest in the game of poker played in his hotel; Eansom was interested in the game played at his place. Meares did not supply chips; Eansom admitted that he supplied the chips to the players in his place.
Meares took no part in the games at his hotel, Eansom admits that he played in the games to some extent, and the defendant testified that either Eansom or his associate, Wheeler, played in every game.
Meares paid the money to others who were identified and to whom McGuire had lost it.
Eanson is unable to tell to whom he paid the money claimed in this action; admits that some part of it was paid to himself, and thinks “it may he that he paid some of it to others.”
Here Eansom is not the party attacked. He is the aggressor.
His theory is, that out of his own money he has paid moneys to other people for the defendant’s benefit, and at his request, whereas in fact, as the evidence develops, his attempt is to compel the defendant to pay a gambling debt, to wit, the agreed value of certain poker chips which he loaned to the defendant while the game of poker was in progress, and for the very purpose of being staked on that game.
This alleged contract was “for” or “on account” of the chips. If they were not “money” they were, at least, the representatives of money for the purpose of these-games.
Section 8 of the statute (supra) provides for such transactions.
The defendant seeks to establish a counter-claim and recover from the plaintiffs $2,800, wagered and staked in games of chance known as poker, which he had engaged in with the plaintiffs, and which were to depend upon the event of said game, and which were lost in said game, and won and taken from him by the plaintiffs.
Section 9 of the statute, against betting and gaming, provides that “any person who shall pay, deliver or deposit any money, property or thing in action upon the event of any wager or' bet herein prohibited, may sue for and recover the same of the winner, or the person to whom the- *687 same shall be paid or delivered, and of the stakeholder or other person in whose hands shall be deposited any such wager, bet or stake, or any part thereof, whether the same shall have been paid over by such stakeholder or not, and whether any such wager be lost or not.”
The reply of the plaintiff put the defendant to the proof of the allegations of his counter-claim.
Upon the evidence, I am of the opinion that he has failed to prove them, or at least to fully prove them; conceding that the defendant lost and paid to Ransom money won from him at the game of poker, besides the money sued for by plaintiffs in this action, the defendant’s testimony affords no possible clue for accurately ascertaining how much of his losses were won by the plaintiffs. Defendant admits that he was introduced into the plaintiffs’ poker house by a friend for the purpose of playing poker; that he resorted there whenever he saw fit, and engaged in the games at various times, that he never made a winning, but made losses from the beginning.
Upon his direct examination, in answer to the question: “Do you mean to be understood that you made these i.o Mr. Ransom personally, or to some visitors to the dill),” he testified: “I think a good portion of it went into what is called the drop.”
The defendant cannot testify when he lost the $2,800, which he claims to have lost to Ransom, but he thinks he can pretty nearly give the amounts of six certain losses, aggregating the sum of $2,814, between the periods of December, 1881, and December, 1883.
He played with other visitors in company with the plaintiffs at each of these several “ plays.”
He paid his losses so incurred in cash or checks or orders upon his firm to Ransom, who kept the house and furnished him with chips representing a money value. He played the game of chance with these chips; how many of these chips were won by other visitors, who participated in the game with him, or how many went into the “drop,” or how many were used for purposes admitted to be for other than gaming purposes, such as services rendered and meals, and other refreshments and entertainments furnished at the club, there is no evidence in the case to determine.
The court, therefore, cannot determine exactly what sum the defendant is entitled to, if anything, under the provision of section 9 of the Statute (supra), claimed by him as a counter-claim. It follows, therefore, that the only judgment which can be given in this case, is one dismissing the complaint, with costs.
Judgment for defendant accordingly.