FRANK J. GAWRYS, Plaintiff, *v.* CHARLES PAPKE, Defendant.

City Court of Tonawanda, April 13, 1933.

*Frank J. Maldiner*, for the plaintiff.

*Milton E. Praker*, for the defendant.

HACKETT, J.   This is an action commenced by plaintiff to recover the sum of $275 alleged to be the unpaid balance of the sum of $600 claimed to have been loaned by the plaintiff to defendant in the month of February, 1924. Plaintiff and defendant were the only witnesses produced upon the trial, which took place before the court without a jury.

Briefly, it is the claim and contention of plaintiff that on an unnamed date in the month of February, 1924, he, together with the defendant, and apparently other persons, were in a place known as Bennett's, located in the city of North Tonawanda, N. Y. Plaintiff, defendant and others there engaged in a game of chance described and referred to as craps. It is the contention of the plaintiff that he stopped playing, but defendant continued. Plain-

tiff did not immediately leave. Later, and before plaintiff left, and after he had withdrawn from the game, the defendant, according to plaintiff's story came to him and requested plaintiff to loan him $600, stating that he had to go home to his wife or had obligations to meet. Plaintiff made the loan. At various times after this, February, 1924, and down to and including April, 1932, defendant repaid in all the sum of $335, leaving the balance which plaintiff seeks to recover herein.

According to defendant he was engaged with plaintiff, and apparently others, in a crap game in the month of February, 1924. However, defendant contends that this game took place at the house of the Sweeney Hose Company in the city of North Tonawanda, N. Y., and that during the course of this game and while plaintiff was a player therein he, defendant, obtained or borrowed from plaintiff various amounts which at the end of the game totaled $600. Defendant contends that subsequently thereto and prior to the commencement of this action he repaid plaintiff the sum of $600 and more, and that in any event plaintiff may not recover because the original obligation was a gambling debt or contract, and, therefore, within the prohibition of the statute.

The issue or question for determination, and the only issue, aside from the issue as to the sum actually repaid, is: Was the transaction a lawful loan, or was the same a loan for the express purpose of gambling, etc., and, therefore, prohibited by law?

The law applicable hereto is well settled. Money wagered, bet or staked, or money knowingly loaned for the express purpose of gaming, cannot be recovered. (Penal Law, §§ 992, 993; *Ruckman v. Bryan*, 3 Den. 340; *Ransom v. Vermilyea*, 11 N. Y. St. Repr. 683; *Fruchtman v. Klein*, 113 Misc. 522.) " Where the act of betting is illegal, money loaned for the express purpose of being so used cannot be recovered by the lender, as the contract of loan is itself rendered illegal; and this is especially true under our statute which renders void ' all contracts for or on account of any money,' etc., bet or wagered. * * * Where, however, a person after money has been lost by another to third persons at gaming loans him money with which to pay his loss, or pays such loss himself at the request of the loser, the lender may recover from the borrower the money so loaned or paid; but to bring a transaction within this rule there must be a *bona fide* loan to or payment at the request of the loser; the courts will not permit the winner to use this device as a subterfuge for the evasion of the policy of the law." (N. Y. Law of Contracts, vol. 1, § 603.)

We come, therefore, to a determination of the question of fact. If the transaction was a lawful loan, as plaintiff claims it was, then

plaintiff is clearly entitled to recover the unpaid balance thereof. On the other hand, if the contentions of defendant are correct, if this money was money lost to plaintiff as a result of the game or loaned by plaintiff to defendant for the express purpose of being used in such game, then the transaction is within the prohibition of the statute, and no recovery can be had.

Careful review and consideration of the evidence, and the reasonable inferences to be drawn therefrom, in my opinion permit of but one conclusion, viz., that the money was either the losses of defendant to plaintiff, or money which plaintiff gave defendant at his request during the game, and, therefore, moneys knowingly advanced by plaintiff for gambling purposes. No matter where the game took place, both parties were there; no matter how long either may have engaged in the same, both did engage, and both plaintiff and defendant during this time, and subsequently thereto, admittedly frequented places where games of chance were played, and engaged in such games. It might be, of course, that plaintiff did make a *bona fide* and lawful loan to defendant. The reasonable inferences, indeed the almost irresistible inferences, are against such conclusion. Beyond this it may be noted that this transaction took place about nine years ago and, also, that plaintiff admits he is now in need of money. Under all the circumstances disclosed by the evidence, one is left with the belief that the story told here by plaintiff is " a subterfuge for the evasion of the policy of the law," and, therefore, a device which this court may not permit the plaintiff to use.

However, we have here but the testimony of the two parties themselves, and this testimony is about evenly balanced. None of the others who apparently were present were produced on either side. The plaintiff had the burden of establishing a lawful and enforcible contract by a fair preponderance of the evidence. This burden plaintiff has failed to sustain. (*Greene* v. *Northern Steamship Co.*, 11 Misc. 717; *Matter of Stern*, 235 App. Div. 60; *Caruso, Rinella, Battaglia Co., Inc.*, v. *New York Central Railroad Co.*, 222 id. 371.)

In accordance with the view herein expressed, judgment has this day been entered and docketed in favor of defendant and against plaintiff dismissing the plaintiff's complaint, with costs.