## GIBBONS *vs.* GOUVERNEUR.

The provision in the act of 1821, (*p.* 175, § 1,) continued by subsequent acts, exempting regulated courses in the county of Queens, from the provisions and penalties of the statute against horse racing, does not render valid a wager or bet upon a race run upon such courses; but such bets are notwithstanding illegal and void.

A contract by several parties agreeing among themselves that each shall provide a horse and run a race called a *sweepstakes*—each unsuccessful competitor to pay a sum of money, and any party to the agreement who does not finally compete to pay a less sum, the whole to belong to the winner—is void in all its parts, and an action by the winner for the *forfeit* against a party who declines to compete, cannot be sustained.

ERROR from the superior court of the city of New-York. Gibbons sued Gouverneur in the court below in assumpsit, upon an agreement relating to a horse race, to be run on the Union course in Queens county. The agreement was contained or referred to, in an entry made in a book kept by the proprietors of the course, called the "Sweepstake book of the Union Course," in the following words:

" Spring meeting, 1839. We the subscribers agree to run a sweepstake, mile heats, spring 1839, with colts and fillies dropt in 1836. Entrance $1000; forfeit $250. The second in the race to receive back stakes; four or more to make a race, and to close 1st January, 1837. (1) S. L. Gouverneur, [the defendant] names produce of Geraneum, by Barefoot; (2) Robert L. Stevens, names produce of Black Maria, by Gohanna; (3) John C. Stevens, names produce of Celeste and Shark; (4) William Gibbons, [plaintiff] names Mariner, by Shark, out of Bonnets of Blue."

The import of the agreement was proved to be, that each subscriber who should compete in the race, should contribute $1000; and that such of the subscribers as should not ultimately compete should pay $250 as a forfeiture for not running, and that the winning party should receive the aggregate amount of the contributions and forfeitures, except that the one whose horse was *second* in the race, was to receive back his stakes; that unless four at least became parties to the agreement, it was void; and that the period within which individuals could become parties ended the 1st of January, 1837.

The race was run in the spring of 1839, two horses only starting, that of the plaintiff and the one belonging to Mr. R. L. Stevens. The plaintiff *won.*

Considerable evidence was given to show that the defendant actually became a party to the agreement by authorizing his name to be put to it, and had so admitted; and that every thing was done according to the usage in such cases. The plaintiff claimed to recover the $250 forfeit. When the plaintiff rested, the defendant objected to a recovery on the grounds, among others, that the contract was void as being contrary to the statute against horse racing, and the statute against betting and gaming.

The court declared its opinion to be, that the contract was within the provisions of the last named statute and was void, and with that opinion left the case to the jury, who found a verdict for the defendant.

The plaintiff's counsel excepted, and a bill of exceptions was signed and sealed.

*J. Prescott Hall*, for the plaintiff in error.

*J. Humphrey*, for the defendant in error.

*By the Court*, BEARDSLEY, J. At common law, horse racing for bets, as well as wager contracts upon most subjects, were legal. (*Van Valkenburgh* v. *Torrey*, 7 *Cowen*, 252; *Chit. on Cont.* 495, 712, *Amer. ed.* 1842; *Bunn* v. *Riker*, 4 *John.* 426; *Campbell* v. *Richardson*, 10 *id.* 406.) But the statute makes " all running, trotting or pacing of horses, or any other animals, for any bet or stakes, in money, goods, or other valuable thing, or for any reward to be given to the owner or rider of any animal which shall excel in speed, excepting such as are by special laws for that purpose expressly allowed"—" common and public nuisances and misdemeanors, and all parties concerned therein, either as authors, betters, stakers, stakeholders, judges to determine the speed of the animals, riders, contrivers or abettors thereof, shall be deemed guilty of a misdemeanor, and shall be punished by fine not exceeding five hundred dollars, or by imprisonment not exceeding one year." (1 *R. S.* 672, §§ 55, 56.) In addition to this they are also subjected to various penalties and forfeitures, as is specfied in the succeeding sections. (§§ 57, 58.) These sections do not, in terms, make the wager contract void, but it would be so upon the plain principle that it requires the performance of an act which the law declares to be illegal, and brands as a public nuisance. (*Chit. on Cont.* 692; *Stephens' N. P.* 2739.)

Another section of the statute, however, applies in express terms to such cases, and declares that " all wagers, bets or stakes, made to depend upon any race, or upon any"—" contingent event whatever, shall be unlawful," and " all contracts for or on account of any money or property, or thing in action so wagered, bet or staked, shall be void." (1 *R. S.* 662, § 8.)

The agreement between these parties was a wagering con-

tract; the $250 being put at hazard upon events then uncertain and contingent. If the defendant failed to run the race, he was to forfeit that sum; and if the race was won by the plaintiff, he was to receive the money. There was to be a failure by the defendant and a successful race run by the plaintiff; both being indispensable to his title to the money. The race was to be a sweepstakes, the winner would take all, forfeits included. But the race must be won by the plaintiff, for without this he could not recover. His right depends upon the result of the "*race;*" that result was a "*contingent event:*" the wager was therefore "*void*" within the express words of this section of the statute.

It should here be observed, that the several sections which have been referred to point to different acts. (1) *Racing for a bet* is declared to be a nuisance, and indictable as such. (§ 55.) (2) *Wagers, bets and stakes,* upon the result of a "race" or any other "contingent event," are "unlawful" and "void." (§ 8.)

Both of these sections apply directly to such a case as this seems to be, and the plaintiff cannot possibly recover, unless racing on the Union course in Queens county, and wagers thereon, are excepted from the general law on the subject.

So far as respects the present question, the act of March 19, 1802, (1 *R. L. of* 1813, *p.* 222,) contained provisions similar to those in the revised statutes of 1830, which have been referred to. That act made racing for bets a misdemeanor, and declared that all contracts concerning such bets, or depending on any such race, should be adjudged void in law. (§§ 1, 5.) But by an act passed in 1821, "the training, pacing, trotting and running of horses, upon regulated courses, and upon private property, in the county of Queens, were "declared to be exempted and freed, for and during the period of five years from the passing of this act, from the provisions and penalties of the act" of 1802 before mentioned. (*Laws* 1821, *p.* 175.)

Let it here be particularly noticed, that this statute does not touch the *contract* for a wager, bet or stake, and make that obligatory on the parties, but simply provides that the *act of racing* for bets, on such courses in Queens county as are referred to, shall not be public offences and punishable as such; nor shall

the parties to such races or bets be subject to the penalties and forfeitures specified in the act of 1802. This does not make the betting *contract* legal, but leaves it as it was before, under the act of 1802, absolutely void.

This exemption, in favor of Queens county, from the criminal and penal provisions of the general law of the state, was extended and continued for a further term of ten years, by an act passed in 1826. (*Laws* 1826, *p.* 86.) Then came the revised statutes of 1830, which recognize this exception in favor of Queens county; for while they declare in general terms, that all racing for bets shall be public nuisances, they except "such as are by special laws for that purpose expressly allowed." (1 *R. S.* 672, § 55.) Thus the exemption in favor of Queens county stood from 1830 to 1834, when another act was passed which extended the exemption for a farther term of fifteen years. (*Laws* 1834, *p.* 79.)

The point excepted to, assumes that the Union course was a privileged course under the act of 1821, it was therefore legal to *race* upon it for bets or stakes.

But *wager contracts* upon such races have at all times been void, since the passage of the act of 1802. Parties may bet on races to be run on " regulated courses, and upon private property in the county of Queens," and such races may be run with absolute impunity. No offence is thereby committed, nor penalty or forfeiture incurred. But there is nothing in any of these statutes which makes a wager contract on such a race legal, or which will permit it to be enforced in a court of law. It may be performed if the parties to it think proper to do so : but that is their concern, for at law the contract is void under the very words of the statute, as depending upon a "*race*," and as a " *contingent event.*"

The judgment must be affirmed.

Judgment affirmed.