## MICHAEL BRENNAN, Appellant, *v.* THE BRIGHTON BEACH RACING ASSOCIATION, Respondent.

*Pool selling at horse races, legalized by chapter 479 of 1887.*

The act chapter 479 of the Laws of 1887, subjecting to taxation associations engaged in conducting horse races, and allowing such races to take place for a period not exceeding thirty days in each year, although it does not expressly declare that pool selling at such times and places shall be legal, inferentially shows the intention of the legislature to have been to legalize such sales.
*Jerome Park Company* v. *Board of Police* (11 Abb. N. C., 342) distinguished.

Appeal by the plaintiff from a judgment entered, after a trial at the New York Circuit before the court and a jury, in the office of the clerk of the county of New York on the 23d day of March, 1889, dismissing the plaintiff's complaint, with costs.

*Fromme Brothers*, for the appellant.

*Thomas E. Pearsall*, for the respondent.

Daniels, J. :

The defendant is stated in the complaint to have been a corporation, organized under the laws of this State, and lawfully engaged

in conducting a race course at Brighton Beach, in the county of Kings. This allegation was not denied by the defendant's answer, and the facts, therefore, so far as they are in this manner alleged, were admitted by it. It is further stated in the complaint, and the evidence directly tended to prove the truth of the statement, that on the 10th of August, 1887, at Brighton Beach, the defendant sold and delivered to the plaintiff twenty tickets, at the price of five dollars each, upon a horse known as Elsie B., which, on that day, was entered to run in one of the races conducted by the defendant. And that in the race which afterwards took place this horse was the winner, entitling the plaintiff to receive upon his tickets the sum of $76 5 out of the pools sold on that race. The proof which was given tended to show the purchase of the tickets by the plaintiff, on the race grounds, from a person apparently engaged in the business and occupation of selling them, and his refusal to pay to the plaintiff the amount which, according to the tickets and the result of the race, he had become entitled to receive. At the close of his evidence a motion was made to dismiss the complaint upon the ground that the transaction was a gambling one and he could not recover. The court adopted that view of the case and dismissed the complaint, to which the plaintiff excepted. And whether this was the correct view to take of the law of the case is the only question to be considered upon the appeal, inasmuch as no other objection was raised to the right of the plaintiff to maintain the action.

What is stated to have taken place at the time of purchasing the tickets, and the amount payable thereupon in case of a successful termination of the race, was, in substance and effect, a bet or wager upon the speed of the horse. And under the statute of the State, preceding the enactment of the Penal Code, the contract in this manner intended to be made, was declared to be void. (2 R. S. [6th ed.], 918, § 26.) This section of the act included all wagers, bets or stakes made to depend upon any race, or upon any gaming by lot or chance, or upon any lot, chance, casualty or unknown, or contingent event whatever. And all such bets and stakes were thereby made unlawful, clearly including the case presented by the pleadings and proof in favor of the plaintiff. This remained the law of the State until the enactment of the Penal Code, which, however, was not intended to and did not legalize such a transaction unless permitted

by special laws. But so far as sections 351 and 352 affect bets and wagers and the selling of pools generally their illegality was not changed, but the punishment for violating these sections by bets or wagers made, or pools sold, was greatly increased in its severity. These sections provided and declared that:

Penal Code (§ 351): "A person who keeps any room, shed, tenement, tent, booth or building, or any part thereof, or who occupies any place upon any public or private grounds within this State with books, apparatus or paraphernalia, for the purpose of recording or registering bets or wagers, or of selling pools; and any person who records or registers bets or wagers, or sells pools upon the result of any trial or contest of skill, speed or power of endurance, of man or beast, or upon the result of any political nomination, appointment or election, or being the owner, lessee or occupant of any room, shed, tenement, tent, booth or building, or part thereof, knowingly permits the same to be used or occupied for any of these purposes, or therein keeps, exhibits or employs any device or apparatus for the purpose of recording or registering such bets or wagers, or the selling of such pools, or becomes the custodian or depositary for hire or reward of any money, property or thing of value staked, wagered or pledged upon any such result, is punishable by imprisonment for one year, or by fine not exceeding $2,000, or both."

Penal Code (§ 352): "All racing or trial of speed between horses or other animals for any bet, stake or reward, except such as is allowed by special laws, is a public nuisance; and every person acting or aiding therein, or making or being interested in any such bet, stake or reward, is guilty of a misdemeanor, and, in addition to the penalty prescribed therefor, he forfeits to the people of this State all title or interest in any animal used with his privity in such race or trial of speed, and in any sum of money or other property betted or staked upon the result thereof."

And it was one of their prominent objects to produce the discontinuance of bets and wagers made in any form upon the speed or power of endurance of man or beast; and if they had been left undisturbed by the action of the legislature this action clearly could not be maintained. But a change was again made in the law, by chapter 479 of the Laws of 1887, subjecting these associations to

taxation upon their receipts; and by section 4 of the act pre-
scribing a period during which racing with horses should be
legal, and inferentially declaring during what time pools upon
such races might be sold.  By this section races have been
allowed to be conducted on the grounds of the association for
not exceeding thirty days in each year.  And admission of the
public to these races was allowed to be made.  And the sec-
tion then declares "that such racing and all pool selling in this
State shall be confined to the period between the fifteenth day
of May and the fifteenth day of October, in each year, and all
pool selling shall be confined to the tracks where· the races take
place, and on the days when the races take place."  While this
latter part of the section does not expressly declare that pool
selling shall at the times and places mentioned become legal, it
inferentially discloses the intention of the legislature to have been
to legalize such sales.  They are neither condemned nor forbidden,
but they are regulated; and when these regulations were in this way
prescribed it must have been intended by the law that the sales
might be made, if that was done, within the restrictions of these
regulations.  There would have been no reason nor sense in declar-
ing that the pool selling should be confined within the period men-
tioned, and at the place designated, unless it was intended to sanction
the right of the association to make the sales.  The effect of the
provision is that sales of pools may be made between the fifteenth of
May and the fifteenth of October, but they must be confined to
the tracks where the races take place, and on the· same day
as the races for which the sales may be made.  And that this
was intended to be so, is further sustained by a provision con-
tained in the same section declaring that these two sections of the
Penal Code should not apply to the grounds of the association dur-
ing the days in each year in which the races have been in this man-
ner authorized.  These two sections of the Penal Code did allow
the racing of horses by or under the authority of associations of this
description when that was permitted by special laws.  And then this
section of the act of 1887 has for the period mentioned suspended
even these sections of the Code, without restoring the preceding
law, rendering them for the time mentioned in it inapplicable to
such racing.  And by proceeding further, and prescribing the regu-

lations for pool selling, no other conclusion is left open for adoption than that the legislature intended to sanction these sales when made on the grounds of the association, and on the day of the race sold. And the evidence which was given by the plaintiff, and the other witness sworn on his part upon the trial, was such as to support the conclusion that the tickets purchased by him were pool tickets upon the racing of horses, and that they were purchased at the time and at the place this statute permitted that to be done.

The case of *Jerome Park Company* v. *Board of Police* (11 Abb. N. C., 342), is not applicable to this controversy, for that arose under the law as it existed in 1882, before the enactment of this later statute. As the law then stood this transaction would clearly have been unlawful and criminal. But as it has been changed by this section of the act of 1887, it was legalized at the time and place when these tickets are said to have been purchased.

.The judgment should, therefore, be reversed and a new trial ordered, with costs to the plaintiff to abide the event.

VAN BRUNT, P. J., and BRADY, J., concurred.

Judgment reversed and new trial ordered, with costs to the plaintiff to abide event.