McAdam, J.
The novelty of the application is no argument against it, if it finds solid support in jurisprudence.* At common law, bets or wagers upon a horse race were legal and it required a statute to make them unlawful. This statute prohibited bets and stakes, but was aimed at a race in which the competitors put up the money, and where one had the chance of winning from the other, as in Gibbons v. Gouverneur (1 Den. 170), and did not apply where the stake was put up by an outsider. The payment of entrance fees by the competitors to the racing association, or their incorporation into the stake furnished by it, did not offend the statute (Jordan v. Kent, 44 How Pr. 206; Costello v. Curtis, 13 W. Dig. 20; Harris v. White, 81 N. Y. 532). The statute provisions were substantially re-enacted in the Penal Code (sections 351, 352), but are by the act commonly known as the Ives bill made inapplicable to racing associations during stated periods, May 15 and October 15 in each year (see Laws 1887, ch. 479). This legislative expression indicates a tendency on the part of the State to relax previous laws against the racing of animals, and interpreted in the light of the authorities cited, relieves the contract sought to be enforced of all taint of illegalityillegal gaming implies loss or gain by the parties determined by lot or chance—that is, what the one party to the wager loses the other wins. A purse, prize or premium contributed by a stranger for the doing of something by others is quite a different thing. ' The person offering the stake has not a chance of gaining the thing offered, and has no pecuniary interest in the strife made by the contestants. Such a contest, where the contestant has all to gain and nothing to lose, is not *301 illegal, and since the Ives bill of 1887 (supra) has in effect legislative sanction. The defendant does not seek to withdraw its offer, or repudiate its promises. It stands upon the offer as a contract, and it will be treated accordingly. It declines to permit the colt to run on two grounds—first, because, as it says, the colt was not sold with “its engagements,” and next because the former owner, on May 4, 1890, cancelled the entry. The plaintiff bought the colt April 25, 1890, as “ eligible to the futurity race,’’ which means “ legally qualified to enter into it.” This being the plain import and intent of the sale, the former owner could not, after disposing of the colt as eligible,'do any act after the sale that could make him ineligible. The colt was sold with “ this engagement” if no other. It is not contended that the entry is a personal privilege, for the rules of the defendant permit a sale with “ the engagement,” nor is the transfer required to be evidenced by a writing except where the nominator dies before the race. The defendant also claims that the plaintiff consented to cancel the antry, but this is disputed, and as the affirmative of proving such consent is on the defendant, the fact has ' not been established by evidence of that preponderating character that can be called conclusive.
As racing associations have by legislative enactment been brought within the pale of the law, they must not complain if the law acts upon them and enforces their agreements as it does the promises of other associations and corporations.* The rights and obligations of the parties may be more satisfactorily established and determined at the trial than they can be within the short time allowed for the decision of this motion. The plaintiff has equities, and is entitled to relief. He bought the colt with the entry into the futurity race of 1891, and may have paid more for it on that account. It will be more *302 valuable if it wins. To exclude the colt from the race would deprive the plaintiff of all possibility of righting his grievance, for he could not prove that his horse would have won the race; a trial on the track in company with the other competitors will alone determine that. The plaintiff should not be. deprived of large possible gains without a judicial determination after a formal trial of his action, and a hearing on the merits. Permitting the plaintiff’s colt to run can do the defendant no possible injury. The colt has a splendid record, and ought to be welcomed to the struggle. Under the circumstances the interests of all parties will be best conserved by permitting the horse to run in .the race in order that the status of the owner may be ascertained. If it loses the race the absence of all claim is at once determined. If it succeeds, the plaintiff is • furnished with a basis upon which to assert his legal rights. This will not prevent the defendant from determining in its own way which horse rightfully entered the race, or won the stake, or from paying it over according to his decision. It simply preserves whatever liability, legitimately flowing from the contract, it may have incurred to the plaintiff, and this may be determined in an action to enforce the same. To this extent the plaintifFs right to equitable relief is clearly established.
An injunction will be granted to carry into effect these views. It will be conditional upon the payment or tender of the $250 fee to the defendant, and the filing of the usual undertaking in the sum of $1,000.

 See 23 Abb. N. C. 447 ; Alb. Brief on Pleading, 88, § 94.

 See Brennan v. Brighton Beach Racing Asso., 24 Abb. N. C., 305.