## CORRIGAN v. CONEY ISLAND JOCKEY CLUB.

*(Superior Court of New York City, Special Term.   August 29, 1891.)*

1. MANDATORY INJUNCTION—PERMITTING ENTRY FOR HORSE RACE.

   A jockey club induced the owner of a mare in foal to enter the colt for a race known as the "Futurity," to take place August 29, 1891.   When the colt was a year old, it was sold as eligible to the race, the club's rules allowing such sales. The stakes were made up of fees from such entries and a purse contributed by the club.   The colt was properly entered, and the purchaser offered to pay the fee required, and to comply with all conditions precedent.   *Held,* that a mandatory injunction would lie to compel the club to permit the colt to enter the race.

2. SAME—RIGHTS OF PURCHASER OF HORSE.

   The purchaser's rights could not be prejudiced by a cancellation of the entry made by the former owner subsequent to the sale, and without the purchaser's consent.

Action by Edward Corrigan against the Coney Island Jockey Club for a mandatory injunction to compel defendant to permit plaintiff's colt to enter a race.

The plaintiff is in the business of breeding and running race-horses for purses and stakes at the different race tracks, having stables on all of them. The defendant is engaged in conducting a race track at Sheepshead Bay, Kings county, N. Y.   One of its objects is to improve the breed of horses, and for that purpose stakes and purses are made up, and horses are run to test their power, speed, and endurance.   Entrance fees are paid by those entering horses; and these, together with a purse contributed by the defendant, form the "stake," which is either given to the owner of the horse winning the race, or divided in certain proportions among the owners of the first, second, and third horses.   These stakes are open for entries many months, and sometimes two or three years, before the day fixed for the running of the race.   In stake races, each owner is compelled to enter his horse before a certain date, and to pay a certain amount, which is forfeited in case the owner shall, within a certain time, declare that his horse shall not enter the contest.   Among the stake races so arranged by the defendant is one called the "Futurity."   This is a stake race in which the owner of a mare in foal enters the get of such mare to run at the age of two years.   Thus, the entry to the Futurity must be made more than two years before the day fixed for the race, and actually before the horse which is to take part in it is born.   In the year 1888 the defendant opened entries for a race known as the "Futurity," to be run on Saturday, August 29, 1891, and in providing for it offered great pecuniary inducements to breeders and owners falling within said conditions, provided their animals developed superior endurance and speed, and came in, at the termination of the race, first, second, or third.   In accordance with these terms, Gen. Jackson, the owner of the Belle Meade stud farm of Nashville, entered for the race the get of a certain thoroughbred mare known as "Brunette," then in foal, which had been covered during the year 1888 by a certain thoroughbred race-horse known as "Iroquois."   In the spring of 1889 the mare foaled a certain bay colt, which was named "Huron."   On April 25, 1890, the colt, then known as a "yearling," was purchased at auction by the plaintiff. The catalogue described the pedigree of the colt, and contained these words: "Eligible to Coney Island Futurity, 1891."   The plaintiff claims that the purchase included the entry, or what is technically known as "the engagement," of the colt, and that he became entitled to run said colt in the race.   The horse is ready for the contest, but the defendant refuses to permit it to take part, although it is conceded the colt was properly entered, and the plaintiff had offered to pay the $250 fee required and comply with all the conditions precedent.   The stake is about $70,000, and unless the colt is allowed to take part in the race, the damages will be irreparable, because incapable of oral or written proof.   If the colt wins the stake, its value will be increased, while no injury can result to the defendant by allowing it to run.   Upon these facts,

the plaintiff, by bill in equity, applies for a mandatory injunction in the nature of a specific performance, to the end that the defendant be enjoined from preventing the colt from running according to the agreement aforesaid.

*Howe & Hummel*, for plaintiff. *Platt & Bowers* and *J. Sergeant Cram*, for defendant.

McADAM, J. The novelty of the application is no argument against it, if it finds solid support in jurisprudence. At common law, bets or wagers upon a horse race were legal, and it required a statute to make them unlawful. This statute prohibited bets and stakes, but was aimed at a race in which the competitors put up the money, and where one had the chance of winning from the other, as in *Gibbons* v. *Gouverneur*, 1 Denio, 170, and did not apply where the stake was put up by an outsider. The payment of entrance fees by the competitors to the racing association, or their incorporation into the stake furnished by it, did not offend the statute. *Jordan* v. *Kent*, 44 How. Pr. 206; *Costello* v. *Curtis*, 13 Wkly. Dig. 20; *Harris* v. *White*, 81 N. Y. 532. The statute provisions were substantially re-enacted in the Penal Code, (sections 351, 352,) but are, by the act commonly known as the "Ives Bill," made inapplicable to racing associations during stated periods, May 15th and October 15th in each year. See Laws 1887, c. 479. This legislative expression indicates a tendency on the part of the state to relax previous laws against the racing of animals, and interpreted in the light of the authorities cited, relieves the contract sought to be enforced of all taint of illegality. Illegal gaming implies loss or gain by the parties determined by lot or chance; that is, what the one party to the wager loses the other wins. A purse, prize, or premium contributed by a stranger for the doing of something by others is quite a different thing. The person offering the stake has not a chance of gaining the thing offered, and has no pecuniary interest in the strife made by the contestants. Such a contest, where the contestant has all to gain and nothing to lose, is not illegal, and, since the Ives bill of 1887, supra, has in effect legislative sanction. The defendant does not seek to withdraw its offer or repudiate its promises. It stands upon the offer as a contract, and it will be treated accordingly. It declines to permit the colt to run on two grounds only: *First*, because, as it says, the colt was not sold with "its engagements," and, *next*, because the former owner, on May 4, 1890, canceled the entry.

The plaintiff bought the colt April 25, 1890, as "eligible to the Futurity race," which means "legally qualified to enter into it." This being the plain import and intent of the sale, the former owner could not, after disposing of the colt as eligible, do any act after the sale that could make him ineligible. The colt was sold with "this engagement," if no other. It is not contended that the entry is a personal privilege, for the rules of the defendant permit a sale with "the engagement," nor is the transfer required to be evidenced by a writing, except where the nominator dies before the race. The defendant also claims that the plaintiff consented to cancel the entry; but this is disputed, and, as the affirmative of proving such consent is on the defendant, the fact has not been established by evidence of that preponderating character that can be called conclusive.

As racing associations have by legislative enactment been brought within the pale of the law, they must not complain if the law acts upon them, and enforces their agreements as it does the promises of other associations and corporations. The rights and obligations of the parties may be more satisfactorily established and determined at the trial than they can be within the short time allowed for the decision of this motion. The plaintiff has equities, and is entitled to relief. He bought the colt with the entry into the Futurity race of 1891, and may have paid more for it on that account. It will be more valuable if it wins. To exclude the colt from the race would deprive the plaintiff of all possibility of righting his grievance, for he could not prove

that his horse would have won the race. A trial on the track in company with the other competitors will alone determine that. The plaintiff should not be deprived of large possible gains without a judicial determination, after a formal trial of his action and a hearing on the merits. Permitting the plaintiff's colt to run can do the defendant no possible injury. The colt has a splendid record, and ought to be welcomed to the struggle. Under the circumstances the interests of all parties will be best conserved by permitting the horse to run in the race, in order that the *status* of the owner may be ascertained. If it loses the race, the absence of all claim is at once determined. If it succeeds, the plaintiff is furnished with a basis upon which to assert his legal rights. This will not prevent the defendant from determining in its own way which horse rightfully entered the race or won the stake, or from paying it over according to its decision. It simply preserves whatever liability, legitimately flowing from the contract, it may have incurred to the plaintiff; and this may be determined in an action to enforce the same. To this extent the plaintiff's right to equitable relief is clearly established. An injunction will be granted to carry into effect these views. It will be conditional upon the payment or tender of the $250 fee to the defendant, and the filing of the usual undertaking in the sum of $1,000.