David Gideon, Respondent, v. Philip J. Dwyer, Appellant.

*Action for slander — when special damage must be alleged — when unnecessary — complaint alleging charges of "turf frauds" — words actionable from extrinsic facts — words actionable per se.*

Defamatory language, without proof of special damage, is not, as a rule, a sufficient statement of a cause of action for slander.

An action of slander may be maintained without proof of special damage if any injurous imputation be made affecting the plaintiff therein in his office, profession or business, and words are actionable, without proof of special damage, which directly tend to the prejudice of any one in his office, profession, trade or business.

Where the words, alleged to have been spoken in the complaint in an action for slander, derive their actionable quality from their relation to facts and circumstances extrinsic the words themselves, the plaintiff must state those facts and circumstances; then aver that the words spoken related to those facts and circumstances by laying a colloquium, and, lastly, by innuendoes, connect such words as need explanation with the facts and circumstances previously stated in the declaration.

The complaint, in an action brought to recover damages for slander, alleged that the plaintiff was the owner and breeder of thoroughbred horses for racing purposes; that his business was the selling of such horses and running the same in races lawfully conducted; that under the rules of certain racing associations, in order to entitle an owner of horses to enter them for prizes, it was

necessary that he should not have been guilty of or concerned in any fraudulent practices on the turf, and that any dishonesty or " crookedness" in racing by any owner at the track of any association would tend to disqualify such owner from making entries, and lead to the disqualification for racing purposes of all the horses owned by him, and thereby render his property valueless for racing purposes ; that, in racing parlance, such disqualification is known as being " ruled off the turf."

That the defendant, at a specified time and place, in the presence of witnesses, uttered the following words to the plaintiff, in substance : "You are no sportsman. You had to leave Nashville on account of a turf fraud you committed there. President Clark, of the Louisville Jockey Club, wanted to rule you off for your crooked practices there, and warned you off the turf there, and you had to leave town."

That, by reason of such facts, the plaintiff was injured in his good name, fame, reputation, character and business. The defendant demurred to the complaint on the ground that it did not state facts sufficient to constitute a cause of action.

*Held,* that the words were actionable *per se ;* that they were not confined to the plaintiff's character as a sportsman, but also charged him with the commission of turf frauds, and clearly defamed him in his business of raising and selling horses and entering and running them in races lawfully conducted ;

That, as the language would have a tendency to prejudice the plaintiff in his whole business, regardless of the consideration whether racing horses for money was or was not, at common law, a lawful employment, it was unnecessary for him to allege special damage in order to maintain the action.

FOLLETT, J., dissenting.

APPEAL by the defendant, Philip J. Dwyer, from an interlocutory judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 9th day of January, 1895, upon the decision of the court rendered at the New York Special Term overruling the defendant's demurrer to the plaintiff's amended complaint.

*P. H. McCarren,* for the appellant.

*Otto Horwitz,* for the respondent.

O'BRIEN, J. :

This action is for slander. The complaint alleges that plaintiff is an owner and breeder of thoroughbred horses for racing purposes ; that he owns a stock farm where horses are raised and bred ; that his business is and has been for many years the selling of such horses and entering and running the same in races lawfully conducted and

248 GIDEON *v.* DWYER.

carried on by various associations in this State and elsewhere, and that he has always enjoyed and maintained a good and honorable name and reputation for honesty, fair dealing and straightforwardness in all transactions connected with his said business; that under the rules of the various racing associations aforesaid, nearly all of which are controlled by a single central association, in order to entitle an owner of horses to enter them for prizes, it is necessary that he shall not have been guilty of or concerned in any fraudulent practices on the turf in this or any other country; that any dishonesty or "crookedness" in racing by any owner at the track of any association would be taken cognizance of by the central organization, and would tend to disqualify such owner from making entries and lead to the disqualification for racing purposes of all horses owned by him, and thereby render his property valueless for racing purposes; that in racing parlance such disqualification is known as being "ruled off the turf;" that on June 30, 1894, at a racecourse, in the presence and hearing of a number of persons, the defendant spoke of and concerning and to the plaintiff and concerning his said business, in a loud and offensive voice, the following false and defamatory words in substance: "You are no sportsman. You had to leave Nashville on account of a turf fraud you committed there. President Clark, of the Louisville Jockey Club, wanted to rule you off for your crooked practices there, and warned you off the turf there, and you had to leave town." And that by reason of the premises the plaintiff was prejudiced and injured in his good name, fame, reputation, character and business. The defendant demurs on the ground that the complaint does not state facts sufficient to constitute a cause of action.

The defendant contends that the words were not, of themselves, actionable, and that, therefore, the plaintiff cannot recover without proof of special damage, which is not alleged. The question, therefore, underlying the demurrer is: Were the words thus spoken of and concerning the plaintiff actionable *per se?* The general rule is, that defamatory language without proof of special damage is not a sufficient statement of a cause of action except in certain specified instances, all of which it is not necessary here to enumerate, it being sufficient to confine ourselves to the one exception which relates to words spoken of one in relation to his office, profession or trade.

As said in Folkard's Starkie on Libel and Slander (Wood's Notes, p. 105): "An action of slander may be maintained *without proof of special damage* in the following cases: " \* \* \* *Third.* If any injurious imputation be made affecting the plaintiff in his office, profession or business." And at page 177: "To enumerate the different decisions upon this subject would be tedious, and to reconcile them impossible, yet they seem to yield a general rule sufficiently simple and unembarrassed, namely, that words are actionable without proof of special damage which directly tend to the prejudice of any one in his office, profession, trade or business."

In *Moore* v. *Francis* (121 N. Y. 199) Judge ANDREWS, in the course of the opinion reviewing the authorities, says (p. 203): " Defamatory words, in common parlance, are such as impute some moral delinquency, or some disreputable conduct to the person of whom they are spoken. Actions of slander for the most part are founded upon such imputations, but the action lies in some cases where the words impute no criminal offense, where no attack is made upon the moral character, nor any charge of personal dishonor. The first and larger class of actions are those brought for the vindication of reputation in its strict sense against damaging and calumnious aspersions. The other class fall for the most part at least, within the third specification in the opinion of Chief Justice DE GREY, of words which tend to injure one in his trade or occupation. The case of words affecting the credit of a trader, such as imputing bankruptcy or insolvency, is an illustration. The action is maintainable in such a case although no fraud or dishonesty is charged, and although the words were spoken without actual malice. The law allows this form of action, not only to protect a man's character as such, but to protect him in his occupation also against injurious imputations. It recognizes the right of a man to live and the necessity of labor, and will not permit one to assail by words the pecuniary credit of another, except at the peril, in case they are untrue, of answering in damages. The principle is clearly stated by BAYLEY, J., in *Whittaker* v. *Bradley* (7 D. & R. 649): 'Whatever words have a tendency to hurt or are calculated to prejudice a man who seeks his livelihood by any trade or business are actionable.' When proved to have been spoken in relation thereto the

action is supported, and unless the defendant shows a lawful excuse the plaintiff is entitled to recover without allegation or proof of special damage, because both the falsity of the words and resulting damage are presumed."

The defendant does not contend against these elementary principles of the law of slander, but claims that the words themselves clearly show that they were spoken of the plaintiff, not as a business man, but as a sportsman or patron of the turf, and, therefore, are not in themselves actionable. We cannot, however, agree with the defendant in this contention. As well said by the learned judge below : " The defamatory words were not confined to the plaintiff's character as a sportsman. They also charged him with the commission of turf frauds. Now it is distinctly averred that the plaintiff is engaged in the business of raising and selling horses, and of entering and running horses in races lawfully conducted by various racing associations in this State and elsewhere. To say of such a man that he had committed turf frauds, and that he was warned off the turf for crooked practices thereon, is clearly to defame him in the business thus set out. They tended to prejudice him therein. To use the language of the books, ' they touched him in his business.' " We think this a correct expression of the law ; and while the language, if used with reference to one not engaged in the occupation of raising and racing horses, or concerning whom it was not alleged in the complaint that he was so engaged, might not be slanderous *per se*, we think that not only under our Code pleading, but under the stricter system of pleading that prevailed prior to its adoption, the complaint stated a good cause of action — the introduction and explanation showing the business of the plaintiff and the meaning of the words, thus definitely connecting the words spoken with the plaintiff's business. What was said in *Kinney* v. *Nash* (3 N. Y. 182) is here applicable : " The words spoken as alleged in this case derive their actionable quality from their relation to facts and circumstances extrinsic of the words themselves. In such case the plaintiff must, as he has done here, by way of introduction or inducement, state those facts and circumstances ; then aver that the words spoken related to those facts and circumstances by laying a *colloquium*, as it is called, and lastly by innuendoes connect such of the words as need explanation with the facts and circum-

stances previously stated in the declaration." Without observing this formal or technical order of stating the facts, the plaintiff here has stated the facts and circumstances, and clearly and definitely, by proper explanations of the meaning of the words and by a statement of the character of his business, has connected the facts and circumstances with the words used, and in addition alleged (but which without such allegation would be inferred) that they tended to injure and prejudice him in his business.

With the light thus afforded by "facts and circumstances extrinsic of the words themselves," accompanied by a statement as to the place and persons in whose hearing they were uttered, we think the conclusion follows that they were certain to be accepted by those who heard them, not simply as meaning that the plaintiff was a mere "patron of the turf," without any business connection with it, who was to be shunned or avoided, but as directly and seriously reflecting upon his reputation for honesty on the turf, *i. e.*, in the way of his occupation or profession of horse racing. The complaint alleges that, at the time the words were spoken, the plaintiff carried on such profession or trade, and the words tended to prejudice him therein. It was not necessary, therefore, to show special damage.

In the case of *Greville* v. *Chapman* (8 Jur. 189; S. C., 5 Q. B. 731) the defendant imputed to the plaintiff that he had entered a horse for certain stakes at Epsom, and had afterwards fraudulently withdrawn the horse for the purpose of obtaining an unfair advantage over other persons with whom he had made heavy wagers on the result; held, that the action would lie, and this whether or not the transactions in which the declaration showed the plaintiff to be engaged were legal.

In *Yrisarri* v. *Clement* (3 Bing. 432; S. C., 11 Moore, 308) it was held that an action does not lie for anything that may be said of the plaintiff's conduct in an illegal transaction, but for misconduct imputed to him in any matter independently of the illegal transaction, though the slanderous words arise out of it, an action for slander would lie. And in *Foulger* v. *Newcomb* (L. R., 2 Ex. 327) it is said that words spoken imputing to a man misconduct in his office or trade are actionable, although the office or trade is one of which the court cannot take judicial notice.

Here, the plaintiff alleges that he was engaged in raising and sell-

ing horses, and also in racing them for stakes and purses; and we have referred to the above cases for the purpose of showing that, although a discussion might be provoked as to whether racing horses for money was a lawful occupation, this, though resolved against the plaintiff, would not be conclusive, because that was but one part of his business, which consisted also in the breeding and raising of race horses, which might or might not be entered in races by him, and might or might not engage in races for money or in an illegal way. And as the language would have a tendency to prejudice him in his whole business, we think that, regardless of this consideration of whether racing horses for money is or is not at common law a lawful employment, the plaintiff has made a showing that the words used were slanderous *per se,* and it was not necessary, therefore, to allege special damages.

As, in our opinion, a good cause of action was stated in the complaint, the judgment overruling the demurrer thereto should be affirmed, with costs, but with leave to defendant to answer over within twenty days on payment of costs.

VAN BRUNT, P. J., concurred.

FOLLETT, J. (dissenting):

By this action damages are sought to be recovered, because the defendant on the 30th of June, 1894, on a race track in this State, said in the hearing of divers persons that the plaintiff had on a particular occasion violated the ethics of a racecourse at Nashville, in the State of Tennessee. The words complained of are : " You are no sportsman. You had to leave Nashville on account of a turf fraud you committed there. President Clark, of the Louisville Jockey Club, wanted to rule you off for your crooked practices there and warned you off the turf there, and you had to leave town." The words uttered are not slanderous *per se,* and it is not alleged that the plaintiff sustained special damages by reason of the words spoken. It is urged that the words are slanderous because they touched the plaintiff in his business and injured his business reputation. To say of a person in the presence of others, " You are no sportsman " is not slanderous as tending to injure the person in his business, trade or calling, because no such occupation is recognized by the law of this State. The words uttered do not

relate to the appellant's business as a breeder or seller of horses, but solely to his conduct on a racecourse at Nashville, Tenn.    Is the running of horses on racecourses recognized by the law of this State as a legal business or occupation?    If it is not, the plaintiff cannot recover damages for words derogatory of his conduct in racing horses.    Since the enactment of chapter 44 of the Laws of 1802 the racing of horses for bets or stakes, in money or property, has been generally condemned as gambling, and punished as a crime.    This statute was continued by the Revised Laws of 1813 (Vol. 1, p. 222).    To this general statute there was no exception until the passage of chapter 193 of the Laws of 1821, which provides : " That from and after the passing of this act, the training, pacing, trotting and running of horses, upon regulated courses, and upon private property, in the county of Queens, is hereby declared to be exempted and freed, for and during the period of five years from the passing of this act, from the provisions and penalties of the act entitled 'An act to prevent horse racing and for other purposes.' "    (Chap. 44, Laws of 1802.)    By chapter 108, Laws of 1826, this act was continued in force until March 30, 1836, and by chapter 73, Laws of 1834, it was continued in force until March 30, 1851.

In 1828 the provisions of the Revised Laws, slightly changed, became a part of the Revised Statutes.    Chapter 44, Laws of 1802, was repealed by chapter 21, Laws of 1828 (2d meeting), § 69. (1 R. S. 672, § 55.)    The following is a copy of the section :

"§ 55.    All running, trotting or pacing of horses, or any other animals, for any bet or stakes in money, goods or other valuable thing, or for any reward to be given to the owner or rider of any animal which shall excel in speed, excepting such as are by special laws for that purpose expressly allowed, shall be deemed racing within the meaning of this Article, and are hereby declared to be common and public nuisances and misdemeanors; and all parties concerned therein, either as authors, betters, stakers, stakeholders, judges to determine the speed of the animals, riders, contrivers or abettors thereof, shall be deemed guilty of a misdemeanor, and shall be punished by fine not exceeding five hundred dollars, or by imprisonment not exceeding one year."

It will be observed that races conducted under special laws were

not deemed to be within the section. While chapter 193, Laws of 1821, and the Revised Statutes were in force two cases arose over the validity of contracts entered into in respect to the racing of horses in Queens county, and it was held that chapter 193 did not validate racing track contracts, but simply exempted the parties engaged in racing from the operation of the criminal law. (*Gibbons* v. *Gouverneur*, 1 Den. 170; *Ruckman* v. *Bryan*, 3 id. 340.)

In *Harris* v. *White* (81 N. Y. 532), decided in 1880, it was held that the term "bet or stakes" used in the Revised Statutes, did not include "purses, prizes or premiums" as these words are now commonally understood, and that one who had contracted to drive the horses of another for purses, prizes or premiums on racecourses could recover his wages. The Penal Code took effect December 1, 1882, and contains the following provision:

"§ 352. *Racing of animals for stake.*— All racing or trial of speed between horses or other animals for any bet, stake or reward, except such as is allowed by special laws, is a public nuisance; and every person acting or aiding therein, or making or being interested in any such bet, stake or reward, is guilty of a misdemeanor; and, in addition to the penalty prescribed therefor, he forfeits to the people of this State all title or interest in any animal used with his privity in such race or trial of speed, and in any sum of money or other property betted or staked upon the result thereof."

This section superseded section 55 of the Revised Statutes, which was expressly repealed by chapter 593, Laws of 1886. In 1887 the so-called Ives' Pooling Law was passed (Chap. 479, Laws of 1887), section 4 of which provides:

"§ 4. The number of days upon which races may be conducted upon any race track or grounds is limited to thirty days in each year, and during that number of days only races shall be authorized and allowed upon such tracks or grounds, during which time the same may be kept open for the admission of the public, subject to the conditions and limitations prescribed by the acts or the several amendments thereto under which the said associations were incorporated, and the provisions of sections three hundred and fifty-one and three hundred and fifty-two of the Penal Code shall not apply to the grounds of such associations during the number of days in each year during which the said races are hereby authorized; that

such racing and all pool selling in this State shall be confined to the period between the fifteenth day of May and the fifteenth day of October in each year, and all pool selling shall be confined to the tracks where the races take place, and on the days when the races take place."

So far as this statute authorizes poolselling it has been held to be unconstitutional by the General Term of Common Pleas (*Irving* v. *Britton*, 8 Misc. Rep. 201), and constitutional by the General Term of the fourth department. (*Reilly* v. *Gray*, 77 Hun, 402.)

In 1890 a case arose in which the plaintiff sought to recover the amount of his winnings on pool tickets purchased from a racing association, and it was held that under chapter 479, Laws of 1887, such contracts were validated and a recovery could be had. (*Brennan* v. *Brighton Beach Racing Association*, 56 Hun, 188.)

In *Corrigan* v. *Coney Island Jockey Club* (40 N. Y. St. Repr. 142) a mandatory injunction was granted compelling the defendant to perform its contract and permit the plaintiff's horses to run for a prize in a particular race.

I am unable to discover any difference in principle between chapter 479, Laws of 1887, and chapter 193, Laws of 1821, under which *Gibbons* v. *Gouverneur* (*supra*) and *Ruckman* v. *Bryan* (*supra*) were decided. These cases are not expressly overruled in 56 Hun, 188, and 40 New York State Reporter, 142, nor were they referred to in 56 Hun, 188. It seems to me that the only effect of the Ives' Pooling Law is to suspend the operation of the penal provisions of the Code during a limited period, and that it does not and was not intended to validate racing contracts or to recognize horse racing for bets, wagers, purses, prizes, rewards or premiums as a legal business or occupation.

The winning or losing of less than twenty-five dollars within the space of twenty-four hours is not a misdemeanor (Penal Code, § 341), but it has never been held that so winning or losing is not gambling, or that contracts made in such games can be enforced.

For a further reason a cause of action is not stated in the complaint. The words alleged to be actionable are, " You are no sportsman," " A turf fraud you committed there " and " Your crooked practices there." These terms are ambiguous, and no court, I think, will take judicial notice of the meaning of any one of them. The

word " there " in one instance refers to a transaction on a racecourse at Nashville, and in another instance probably to a race at Louisville, Ky., conducted by the Louisville Jockey Club. Before a court could take judicial notice of the local meaning of these terms it would have to be familiar with the rules and regulations of the Nashville racecourse and of the Louisville Jockey Club, and I assume that the judges of this State are not so familiar with the rules of those distant racing associations as to be able to determine what acts are " crooked practices " or " turf frauds " under those rules. When words of a foreign language or ambiguous words are alleged to be defamatory their meaning must be averred in the complaint by an appropriate innuendo. (*Pike* v. *Van Wormer*, 5 How. Pr. 171; *Fry* v. *Bennett*, 5 Sandf. 54, 66; Moak's Van Sant. Pldgs. 209.) I think if the meaning of those terms had been alleged in the complaint that it would be beneath the dignity of the Supreme Court to engage in an investigation of the rules of racecourses for the purposes of determining whether or not the plaintiff had been guilty of " crooked practices " or of " turf frauds " under their rules.

Sportsmen wrongfully charged on race tracks with unsportsmanlike conduct, or with turf frauds, in violation of the rules of racecourses, should be content with such remedies as are provided by the rules of the turf.

The judgment should be reversed, the demurrer sustained and a final judgment entered dismissing the complaint, with costs.

Judgment affirmed, with costs, but with leave to defendant to answer over in twenty days on payment of costs.